IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DUANE KURT MAKELA,<br>Defendant. | Case No. 19-cr-00215-CRB-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Duane Kurt Makela is an inmate in the custody of the Bureau of Prisons and is housed at the Federal Correctional Institution at Terminal Island. See Mot. (dkt. 32) at 1. Mr. Makela is 50 years old and has asthma and chronic obstructive pulmonary disease ("COPD"). Id. On April 25, 2020, Mr. Makela tested positive for COVID-19. Opp'n (dkt. 34) at 3.

Mr. Makela filed a pro se motion for compassionate release on May 4, 2020, arguing that extraordinary and compelling reasons justify his release pursuant to 18 U.S.C. § 3582. See Mot. Specifically, he argues that his "asthma and COPD put him at greater risk for suffering more acutely from COVID," and that, "even if [he] were to make a full recovery from this bout of illness, the medical community does not know whether antibodies will protect him from reinfection. . . ." Reply (dkt. 44) at 1. The government filed a Status Memorandum Regarding Defendant's Present Medical Condition on May 8, 2020. See Status (dkt. 33) (noting that Terminal Island medical staff anticipated changing Mr. Makela's status to "COVID-recovered" the following day). It also opposed the compassionate release motion on May 13, 2020, arguing primarily that Mr. Makela is a danger to the community and that no medical emergency justifies

his release.[1]  See Opp'n.  Subsequently, defense counsel filed a notice of appearance on behalf of Mr. Makela, see Notice (dkt. 36), and the parties stipulated to additional briefing, see Stipulation (dkt. 37); Order on Stipulation (dkt. 38).  Mr. Makela filed a reply brief with the assistance of counsel, see Reply, and the government filed a surreply, see Surreply.

The briefing is now complete, and the Court, having jurisdiction,[2] DENIES the motion.

### A.    Danger to the Community

A reduction in sentence under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A); see also Dillon v. United States, 560 U.S. 817, 819 (2010) (holding that the Sentencing Commission policy statement applicable to 18 U.S.C. § 3582(c)(2) remains mandatory, even after United States v. Booker, 543 U.S. 220 (2005)).  The applicable Sentencing Commission policy statement, U.S.S.G. § 1B1.13, directs that a court may only grant compassionate release if it determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  18 U.S.C. § 3142(g) sets forth the four factors for determining dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) the history and characteristics of the person," and (4) "the nature and seriousness

---

[1] The parties give very different accounts of Mr. Makela's experience of COVID-19. Compare Mot. at 1 ("I'm in fear for my life! . . . I've been suffering pounding headaches, fatigue, shortness of breath, sharp pains in my chest, and body aches."); id. at 2 ("I know my body, and I'm not getting better, I'm getting worse."); and Reply at 5 ("Mr. Makela continues to suffer the effects of the virus.  While his breathing has improved, it is still difficult and labored. . . . Mr. Makela continues to get severe headaches. . . ."); with Opp'n at 3 (on May 1, 2020, Makela denied chest pain; every day between May 1, 2020 and May 7, 2020, Makela did not have a fever and denied other COVID-19 symptoms; on May 8, 2020, Makela had no fever and stated that he had no new onset of symptoms); id. at 4 (on May 10, 2020, BOP changed Makela's status to recovered); and Surreply (dkt. 45) at 3 (asserting that Makela's self-reported symptoms worsened after he learned on May 10 that his BOP records would be consulted in connection with his motion).  The Court need not resolve these differences, nor determine whether Mr. Makela's condition rises to the level of "extraordinary and compelling" under the statute, as Mr. Makela does not meet other requirements for compassionate release.

[2] A defendant may bring a § 3582(c) motion after "the lapse of 30 days from the receipt of [] a request by the warden of the defendant's facility. . . ."  18 U.S.C. § 3582(c)(1)(A).  Mr. Makela submitted an application for compassionate release on May 10, 2020.  See Reply at 9; see Surreply at 2 (noting that the Warden received Mr. Makela's request on May 28, 2020).  Mr. Makela's counsel sent an additional request to the Warden on May 29, 2020.  Reply at 9 (citing Crepet Decl. ¶ 3).  30 days have now passed since the submission of both requests.

of the danger to any person or the community that would be posed by the person's release."

Mr. Makela pled guilty to ten counts of armed bank robbery, seven counts of unarmed bank robbery, and two counts of attempted bank robbery, all between March 2018 and February 2019.  See Opp'n at 9.  In ten of these robberies, he brandished or displayed what appeared to be a black handgun to the tellers.  Id.; see also PSR (dkt. 26) at 4.  In one robbery, he dropped a note stating, "I HAVE A GUN, WILL USE IT; PAY ALL $ NOW; BOTH DRAWERS; YOU DEVIATE, I'LL BE BACK 4 U; NO ALARMS I'M WATCHIN YOUR HANDS; DON'T EVEN THINK BOUT BUTTON."  PSR at 8.  The 19 individual offenses here were not victimless: the bank tellers who interacted with Mr. Makela feared for their safety, and many continue to suffer.  See, e.g., Victim Impact Statement 2 (describing "the pain in my chest, the shortness of breath, the uncontrollable fear I still suffer, the avoidance of thinking or talking about what happened because it still brings tears to my eyes and ache to my heart and the feeling of powerless[ness] and worthlessness."); Victim Impact Statement 5 ("He pointed a gun to my chest without any hesitation. . . he took my sanity, happiness and my job with him too.  I had to give up a job I truly loved because I was terrified that he would come back. . . .").  The evidence against Mr. Makela is uncontested.  See Change of Plea Hearing (dkt. 25); PSR at 11 ("The defendant admitted to committing all 19 robberies over the span of several months.").

Mr. Makela's history and characteristics weigh heavily on the Court.  His criminal history and arrest record are lengthy.  See PSR at 23–30.  Moreover, he committed the instant offenses after serving 165 months for six other bank robberies in this same area in the early 2000s.  See Surreply at 7; PSR at 26 (noting that "defendant robbed six banks wherein he threatened violence and possessed a firearm during one of the robberies.").  Upon release from custody for that string of bank robberies, Mr. Makela violated supervised release twice, committing assault and domestic violence.  See PSR at 26.

Mr. Makela argues that he "has not used methamphetamine, heroin, or any illegal drug since he entered jail in April of 2019," and "would participate in drug treatment if he were to be

released." Reply at 13–14.[3] He argues that he was high on drugs every time he engaged in the offense conduct. Id. at 14. And he asserts that he would be able to continue taking bipolar medication if the Court released him. Id.; but see Reply Ex. B ¶ 4 (stating that Mr. Makela's parents "would be happy to pay for Duane's medical insurance, and [are] investigating plans that they can afford," suggesting that he does not currently have medical insurance).

The Court believed at sentencing and believes now that Mr. Makela's remorse is genuine. See, e.g., Letter (dkt. 29) at 2 ("The remorse I feel for the victims, the fear those tellers must have felt[,] eats me up inside."). The Court also believes both that Mr. Makela's drug addiction, along with a series of hardships, propelled his crimes, see, e.g., id. at 5 ("I felt panicked and started using more, numb from reality[,] spiraling out of control at this point, I convince myself that robbing banks was my only option."), and that he does not wish to fall back into drug use and criminality, see id. ("All I know right now, is I'm sincerely sorry for my actions, and I never want to use drugs again!").

But the Court cannot simply trust that Mr. Makela will stay clean and abstain from further criminal acts. Periodic drug testing, see Reply at 14, is no guarantee. As the government notes, Mr. Makela's release plan is to live at home with his parents, see id. at 8, but he was apparently living at home with his parents during his 19-bank robbery spree. See Surreply at 7 (quoting Victim Impact Statement 1 ("where were they when he decided to rob me with a gun?")). The probation officer in this case wrote, not very long ago, that "the harsh reality of the situation is that drugs are the defendant's 'world,' and without intensive treatment, the defendant will most likely reoffend as the drugs cloud his judgment and rational[e]." PSR at 43. And on June 8, 2020, Mr. Makela scored as "high risk" for recidivism on the DOJ PATTERN risk assessment tool. See Surreply at 2. The nature and seriousness of the risk to the community if Mr. Makela is released—the risk that Mr. Makela will rob more banks and thereby terrorize more bank tellers—is too great.

---

[3] He "is currently unable to get this treatment at Terminal Island" due to the pandemic. Id. at 8–9. While this is by no means Mr. Makela's fault, it does lead the Court to further question the present state of Mr. Makela's recovery.

4

      The Court cannot conclude that "[t]he defendant is not a danger to the safety of any other person or to the community," per U.S.S.G. § 1B1.13.  Indeed, the Court concludes that Mr. Makela is a danger.

### B.     3553 Factors

      In addition, the Court must consider the sentencing factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A)(i).  Mr. Makela has served only about 15 percent of his current sentence.  See Surreply at 2, 5 (84 months remaining on 97-month sentence); Judgment in a Criminal Case (dkt. 31) at 2 (sentencing Mr. Makela to 97 months in January 2020).  The Court's 97-month sentence was already well below the 187 months requested by the government, see Gov. Sentencing Memo. (dkt. 27) at 2), and the 120 months recommended by probation, see PSR at 42.  Mr. Makela argues that "the intensity of the suffering [he] has experienced while serving approximately 14 months of this sentence, has been far worse than the entirety of the 162-month sentence he previously served."  Reply at 15 (citing Makela Decl. ¶ 15).  He adds that he will be deterred from "future criminal behavior because he never wants to experience this type of suffering again."  Id.

      The Court is not unsympathetic to Mr. Makela's distress.  But a 14-month sentence is simply not sufficient in this case.  The Court has considered all of the 3553(a) factors, and discussed the facts relevant to 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant") above.  The Court has also considered the need to provide Mr. Makela with medical care in the most effective manner.  See 18 U.S.C. § 3553(a)(2)(D).  Particularly in light of the seriousness of Mr. Makela's crimes, the need "to provide just punishment for the offense," and the need "to protect the public from further crimes of the defendant," granting Mr. Makela's motion would be inconsistent with the applicable sentencing factors.  See 18 U.S.C. § 3553(a)(2).

      Because the Court concludes that Mr. Makela is "a danger to the safety of . . . the community, as provided in 18 U.S.C. § 3142(g)," and that his release would not serve the 3553

//

//

factors, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 10, 2020

CHARLES R. BREYER
United States District Judge